# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| KEYANTAE CARTER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:20-CV-01346 JAR |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Keyantae Carter's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.

**I.     Background**

Plaintiff applied for benefits under Titles II and XVI of the Social Security Act on January 10, 2018, alleging disability as of December 8, 2017[1] due to problems including but not limited to rheumatoid arthritis, diabetes, and hypertension. (Tr. 408-417, 472). After her application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on July 31, 2019, the ALJ issued a written decision on August 14, 2019 denying Plaintiff's application. (Tr. 252-268). Plaintiff's request for review by the

---

[1] Plaintiff applied for disability benefits in 2016; her application was denied. (Tr. 481).

Appeals Council was denied on July 23, 2020. (Tr. 1-7). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II.     Facts

The Court adopts Plaintiff's Statement of Material Facts (Doc. No. 22-1) to the extent they are admitted by the Commissioner (Doc. No. 27-1), and Defendant's Statement of Additional Material Facts (Doc. No. 27-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III.    Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court

might have reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration. Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010)).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

3

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant

4

mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091-92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

## IV. Decision of the ALJ

The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 8, 2017. (Tr. 257). The ALJ found that Plaintiff had the severe impairments of inflammatory arthritis; obesity; and degenerative disc disease, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 257-58).

After considering the entire record, the ALJ determined Plaintiff has the RFC to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a), except: "She can never climb ladders, ropes, or scaffolds. She can occasionally crawl or climb ramps or stairs. She can have no more than occasional exposure to extremes of heat or cold. Lastly, although not prescribed, she may choose to use an assistive device such as a cane for stairs, ramps, uneven ground, and distance ambulation (defined as more than one city block)." (Tr. 258-61).

Based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff can perform her past relevant work as a customer service representative. (Tr. 261). The ALJ further found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as Data Entry Keyer: Dictionary of Occupational Titles (DOT) No. 203.582-054, with approximately 60,000 jobs nationally; Receptionist: DOT No. 237.367-038, with approximately 50,000 jobs nationally; and Order Clerk: DOT No. 249.362-026, with approximately 50,000 jobs nationally, all semi-skilled with an SVP of 4 at the sedentary exertional level. (Tr. 261-63). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 263).

V.  Discussion

Plaintiff raises two issues on appeal. First, Plaintiff asserts the ALJ failed to conduct a proper pain evaluation by addressing relevant factors, such as her work history; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; and functional restrictions. (Doc. No. 22 at 3-8). Second, Plaintiff asserts the RFC is not supported by substantial evidence. Specifically, Plaintiff argues the ALJ cannot rely on a non-examining physician's RFC when the agency RFC assessments, completed almost a year prior to the hearing, were not based upon the full record. (Id. at 8-10). The Commissioner responds that the ALJ

6

properly considered Plaintiff's subjective complaints of pain (Doc. No. 27 at 4-9) as well as the opinion of the State Agency physician (id. at 10-14) in formulating the RFC.

### A. Subjective complaints of pain

At the administrative hearing, Plaintiff testified she was unable to work due to chronic full body pain, including pain in her back and left knee, and "locking up" in her right upper and lower extremities which lasted anywhere from two hours to weeks. (Tr. 297-98). It was also Plaintiff's testimony that she experienced radiating pain in her spine, as well as lightheadedness and reduced grip strength due to her arthritis. (Tr. 299-300, 304-05). She reported difficulty with mobility and climbing stairs and standing for extended periods of time. (Tr. 299, 449-50). Plaintiff also reported that her pain and symptoms were worse if she "overdid it," which included grocery shopping or doing laundry. (Tr. 302). Plaintiff testified she has "maybe 10 good days" a month and that on her bad days, she needed help with most activities, including laundry, meal preparation, and personal care. (Tr. 303).

After consideration of all the record evidence, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the objective medical evidence. (Tr. 259). In particular, the ALJ noted the conservative treatment Plaintiff has received, and the lack of any recommendations for more aggressive treatment, such as a TENS unit, a prescription for a cane, referral to a pain clinic, steroid injections, or nerve blocks. (Tr. 260). The ALJ further noted Plaintiff has not required hospitalization or been considered a surgical candidate for her back pain. (Id.).

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical

evidence. Hutson v. Kijakazi, No. 4:20 CV 841 RWS, 2021 WL 4148340, at *7 (E.D. Mo. Sept. 13, 2021) (citing Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984)). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. Id. (citing Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984); (listing factors such as the claimant's daily activities; the duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions); 20 C.F.R. §§ 404.1529, 416.929.

The Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."). The Court defers to the ALJ's assessment of the claimant's subjective complaints if that assessment is adequately explained and supported by the record as a whole. Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090 (8th Cir. 2018); Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).

Here, the ALJ provided valid and well-supported reasons for discounting Plaintiff's subjective complaints of pain. First, the ALJ reviewed the objective medical evidence regarding Plaintiff's physical impairments and found that Plaintiff has a history of problems associated with diagnosed inflammatory arthritis and mild degenerative disc disease in the cervical and lumbar spine and that the evidence of record supported the limitations in the RFC, but that she failed to

meet her burden to prove more restrictive limitations (Tr. 260-61). In doing so, the ALJ noted that while imaging reports indicated some abnormalities such as signs of osteopenia with soft tissue swelling in the left ankle, and some small erosions at one of the finger joints on the left hand consistent with rheumatoid arthritis or other erosive arthropathy (Tr. 259, 603, 658-59, 736), many imaging reports were unremarkable. (Tr. 259, 608 (left knee imaging unremarkable other than slight medial compartment narrowing), Tr. 605-06, 611 (unremarkable imaging of the left shoulder, left wrist, and left hand); Tr. 658, 736 (no evidence of arthritis in x-rays of the right hand); Tr. 659, 740-41 (x-rays of the cervical and lumbar spine showed only mild degenerative changes), Tr. 659, 740-41 (x-rays of the bilateral knees showed only mildly osteopenic bones, with no evidence of arthritis, normal joint spaces, and no effusions); Tr. 659, 740-41 (x-rays of the bilateral feet revealed no significant arthritis)).

The ALJ further considered the lack of evidence in Plaintiff's treatment records showing a significant and consistent degree of muscle atrophy, paravertebral muscle spasm, sensory or motor loss, reflex abnormality, or gait disturbance (Tr. 260). Indeed, treatment records and progress notes from the relevant period often revealed mostly normal findings – such as normal motor strength in all extremities, normal range of motion, no edema, tenderness, joint swelling, or synovitis, as well as normal balance and gait without the use of an assistive device. (Tr. 260, 567, 571-72, 624, 657-58, 801, 828, 844). An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006). See also Masterson v. Barnhart, 363 F.3d 731, 739 (8th Cir. 2004) (claimant fails to show disabling pain when objective tests support only mild to moderate findings).

The ALJ also considered the consultative physical examination of Plaintiff conducted by Nirmala Mathew, M.D., in May 2018. (Tr. 599-613). At that time Plaintiff reported taking

9

Plaquenil[2], Tramadol, Meloxicam, and Gabapentin which provided her with some relief from pain and joint swelling. (Tr. 600). Dr. Mathew's examination revealed some abnormal findings, including some left ankle swelling; some left heel tenderness; painful range of motion of the left knee, left ankle, and left hand; slightly reduced range of motion of the left shoulder and bilateral knees; and difficulty walking (Tr. 602, 610-12), but also noted that Plaintiff still exhibited normal hand and finger dexterity, normal motor strength in the bilateral upper and lower extremities, normal bilateral grip strength, and intact sensory and reflex findings (Tr. 601-03, 610, 612). Further, Plaintiff was able to control the severity of her symptoms with medication. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling).

The ALJ also noted that Plaintiff has not been prescribed a TENS unit, and despite her reports of using a cane, has not been prescribed one. She has not been referred to a pain clinic or undergone epidural steroid injections or nerve blocks. Nor has Plaintiff required hospitalization or been considered a surgical candidate for her back pain. (Tr. 260). Plaintiff argues the treatments referred to by the ALJ are not treatments for inflammatory arthritis; however, the regulations for pain evaluation stress that the ALJ should consider the type of treatment the claimant receives when evaluating pain, including any measures used to relief pain or other symptoms. See 20 C.F.R. § 404.1529. In doing so, the ALJ may properly consider Plaintiff's conservative treatment history in his determination to discredit subjective complaints of pain. See, e.g., Kamann v. Colvin, 721 F.3d 945, 951 (8th Cir. 2013); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Tourville v.

---

[2] Plaintiff reported that she stopped taking Plaquenil in February 2018 because she could not afford it. (Tr. 260, 600). She does not argue, and the record does not suggest, that she was denied treatment options. See Goff, 421 F.3d at 793.

10

Kijakazi, No. 4:20 CV 719 DDN, 2021 WL 2935888, at *7 (E.D. Mo. July 13, 2021) (citing Gonzales, 465 F.3d at 892).

Lastly, the ALJ considered the findings offered by the state agency physician Manuel Salinas, M.D., who reviewed in detail the evidence of record as of May 2018, and opined that Plaintiff was limited to sedentary work with additional postural and environmental limitations. (Tr. 261, 323-24, 337-38). As discussed below, the ALJ found this opinion to be partially persuasive, recognizing that additional evidence received at the hearing level supported more restrictive limitations (Tr. 261). In any event, Dr. Salinas's determination was an additional factor detracting from Plaintiff's subjective complaints of disabling pain.

Although the ALJ concluded that the evidence of record did not support the alleged severity of Plaintiff's symptoms, the ALJ restricted Plaintiff to sedentary work – the most restrictive of the five exertional categories set out in the regulations – with additional postural and environmental limitations and provided for the need to use an assistive device for ambulation. (Tr. 258-61). See Swink v. Saul, 931 F.3d 765, 771 (8th Cir. 2019) (RFC assessment of light, unskilled work with occasional stooping, kneeling, climbing ramps and stairs, balancing, crouching, and crawling and no exposure to hazards demonstrated that partial weight was afforded to claimant's subjective complaints).

Because the ALJ has provided several valid and well-supported reasons for discounting Plaintiff's allegations, the Court finds no error here. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (holding a credibility determination based on multiple valid reasons is entitled to deference); see also Roberts v. Berryhill, No. 4:16-CV-1604-SNLJ, 2018 WL 1420241, at *6 (E.D. Mo. Mar. 22, 2018).

**B.      Non-examining physician's RFC**

On May 25, 2018, state agency physician Manuel Salinas, M.D., reviewed Plaintiff's medical records through May 2018 and limited her to sedentary work with additional postural and environmental limitations. (Tr. 319, 325). Specifically, Dr. Salinas determined that Plaintiff retained the ability to lift and carry 10 pounds frequently and occasionally; stand and/or walk for a total of 2 hours in an 8-hour workday; and sit (with normal breaks) for about 6 hours in an 8-hour workday. (Tr. 323-25, 337-38). As for Plaintiff's postural limitations, Dr. Salinas further determined that she could occasionally climb ramps and stairs, as well as ladders, ropes, or scaffolds, but had no limitations on her ability to balance, stoop, kneel, crouch, or crawl. (Tr. 324, 338). Finally, Dr. Salinas determined that Plaintiff had no manipulative limitations, but needed to avoid concentrated exposure to extreme temperatures. (Tr. 324, 338).

The ALJ found Dr. Salinas's determinations partially persuasive to the extent they are consistent with and supported by the medical record as a whole regarding the limitation to sedentary work. (Tr. 261). However, the ALJ noted that Dr. Salinas's determinations are internally inconsistent regarding the limitation to sedentary work with the finding that Plaintiff can occasionally climb ladders, ropes, and scaffolds and that additional evidence received at the hearing level supports the more restrictive limitations regarding never climbing ladders, ropes, and scaffolds, occasional crawling, and use of an assistive device for stairs, ramps, uneven ground, and distance ambulation. (Id.).

Plaintiff objects to the ALJ's reliance on Dr. Salinas's opinion because it was issued in May 2018, over a year before Plaintiff's hearing before the ALJ, and thus did not consider her medical treatment records during the ensuing time period. Plaintiff points to additional medical evidence from March 2019 documenting mild erosive arthritis at the 3rd metacarpophalangeal joint; limited range of motion of the right shoulder; pain with range of motion of the right wrist;

12

and reported difficulty with turning doorknobs, faucets, gripping and picking items up with her hands. (Tr. 615-620). Further evidence from May 2019 documents tenderness in the left 4th proximal interphalangeal joints, the right wrist and metatarsophalangeal joints. (Tr. 657-58). The doctor noted limited range of motion of the right shoulder and bilateral knees. (Tr. 658).

Nothing in the Social Security regulations requires a report to be within a certain time frame for an ALJ to rely on it. See Gallup v. Saul, No. 2:19-CV-00003 SRC, 2020 WL 5107282, at *4 (E.D. Mo. Aug. 31, 2020). Additionally, "[b]ecause state agency review precedes ALJ review, 'there is always some time lapse between the consultant's report and the ALJ hearing and decision.' " Hildreth v. Saul, No. 2:19 CV 58 DDN, 2020 WL 5517588, at *8 (E.D. Mo. Sept. 14, 2020) (quoting Chandler v. Comm'r of Social Sec., 667 F.3d 356, 361 (3d Cir. 2011)) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). Nor does legal authority require a consultant's medical opinion to be based on subsequently created medical records for an ALJ to rely on it. Barker v. Colvin, No. 14-0900-CV-W-ODS-SSA, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015) ("[T]he Court is not aware of any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records.").

Furthermore, the opinions of state agency medical examiners merit significant consideration, as ALJs are required by regulation to consider their findings of fact about the nature and severity of a claimant's impairments. See 20 C.F.R. §§ 404.1527(f); 20 C.F.R. §§ 404.1513a(b)(1) (ALJs "must" consider evidence proffered by a state agency disability examiner, "because our Federal or State agency medical or psychological consultants are highly qualified

13

and experts in Social Security disability evaluation."); see also Casey v. Astrue, 503 F.3d 687, 691 (8th Cir. 2007).

Additionally, as discussed in detail above, the ALJ did not base his decision solely on the opinion of Dr. Salinas. The ALJ evaluated Dr. Salinas's opinion within the record as a whole, including the evidence added after such opinion was formed. See Mangrich v. Colvin, No. C15-2002-LTS, 2016 WL 593621, at *8 (N.D. Iowa Feb. 12, 2016) (rejecting argument that ALJ's opinion was not supported by substantial evidence because state agency expert's opinion was rendered without the benefit of more recent evidence, where ALJ reviewed all evidence generated after the state agency opinion). More importantly, the additional evidence does not deprive the ALJ's decision of the support required by law. The ALJ's RFC determination was within the "zone of choice" and will not be disturbed. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006).

**VI. Conclusion**

The ALJ properly considered Plaintiff's subjective complaints of pain as well as the opinion of the State Agency physician in formulating the RFC. For these reasons, the Court finds the ALJ's decision is supported by substantial evidence on the record as whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** without prejudice.

A separate Judgment will accompany this Memorandum and Order.

Dated this 10th day of February, 2022.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**